UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**GARY THOMPSON,**

    **Petitioner,**

v.                                                        **No. 2:15cv148**

**ERIC WILSON, WARDEN,**

    **Respondent.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, Gary Thompson ("Thompson") is a federal inmate at the Federal Correctional Institution in Petersburg, Virginia, challenging his loss of good time credit, pursuant to 28 U.S.C. § 2241. Thompson forfeited 68 days of credit after Bureau of Prisons ("BOP") officials found he committed two prison disciplinary infractions for alcohol use. He seeks restoration of that credit. Respondent moved to dismiss Thompson's petition for failure to exhaust administrative remedies, or in the alternative, to grant summary judgment on Thompson's claims. Because BOP afforded Thompson due process, the undersigned recommends that the Court grant Respondent's alternative motion for summary judgment (ECF No. 4) and dismiss the petition.

## I. STATEMENT OF THE CASE

Thompson was originally sentenced on September 9, 2002, by the Superior Court for the District of Columbia on multiple charges that resulted in an actual term of imprisonment of two years, followed by three years of supervised release. See (ECF No. 5-1, at 6-7). On December 9, 2004 while on supervised realease, Thompson was arrested in the District of Columbia for destruction of property and assault with a dangerous weapon. (ECF No. 5-1, at 3). In February 2005, the D.C. Superior Court sentenced Thompson to three years' imprisonment for violating

1

the terms of his supervised release in his underlying case. Id. On the new destruction of property and assault charges, Thompson pleaded guilty and was sentenced to 136 months' imprisonment in September 2005. Id. BOP aggregated Thompson's sentences for a total term of fourteen years and four months.

Thompson received prior custody credit for the time he served on the original conviction for his time in custody from his arrest through the day before sentencing. (ECF No. 5-1, at 4). Thompson has earned 526 days of good conduct time and is projected to earn a total of 615 days of good time credit by the time of his release. Id.

On September 26, 2010, Thompson was cited with a disciplinary infraction for possessing intoxicants, in violation of BOP Offense Code 222 – Making, Possessing, or Using Intoxicants. (ECF No. 5-2, at 2). Thompson was given a copy of the incident report the next day on September 27, 2010. On September 29, 2010, Thompson appeared before the Unit Discipline Committee ("UDC"), which referred the matter to the Discipline Hearing Officer ("DHO") due to the severity of the violation. Id. Regarding the charges, Thompson reportedly told the UDC, "I was wrong, that's all I have to say." (ECF No. 5-2, at 7). On the same day, Thompson was given notice that he would have an administrative disciplinary hearing before Petersburg's DHO. In writing, Thompson waived his right to have a staff representative, requested no witnesses, and presented no evidence. (ECF No. 5-2, at 9). At the hearing before the DHO on October 14, 2010, he was advised of his rights. The DHO read aloud Section 11 of the incident report and asked Thompson whether he admitted or denied the charge. Thompson responded, "The report is true." (ECF No. 5-2, at 12). As identified in the report, the reporting officer had administered a breathalyzer test on Thompson with a reading of .069. Id. A second test performed about fifteen minutes later revealed another positive reading of .067. Id. Based

on the weight of the evidence, along with Thompson's admission, the DHO found that Thompson had committed the infraction and imposed: (1) disallowance of twenty-seven days of good time credit; (2) fifteen days of disciplinary segregation, suspended on 180 days clear conduct; and (3) three months loss of commissary privileges. (ECF No. 5-2, at 13).

On September 29, 2012, Thompson was cited with another disciplinary infraction for use of alcohol, in violation of BOP Offense Code 112. (ECF No. 5-2, at 15). Thompson was given a copy of the incident report the next day on September 30, 2012. On October 3, 2012, he was provided notice that he would appear before the DHO for a disciplinary hearing and advised of his rights. (ECF No. 5-2, at 16). Thompson elected to have a staff representative, but did not wish to have witnesses. (ECF No. 5-2, at 17). The DHO held the hearing October 12, 2012. During the hearing, Thompson waived his right to a staff representative, called no witnesses, and presented no evidence. (ECF No. 5-2, at 19). Thompson made the statement: "I took three swallows. It was wine." Id. The DHO also considered the reporting officer's statement that he administered an alcohol test on Thompson and he registered a blood-alcohol content of .121. (ECF No. 5-2, at 19). A second test administered fifteen minutes later resulted in a .117, both of which indicated Thompson had consumed alcohol. Id. The DHO again considered the weight of the evidence and Thompson's admission, and found that he committed the act as charged. The DHO imposed: (1) disallowance of forty-one days of good time credit; (2) ten days disciplinary segregation; (3) fifty days disciplinary segregation, suspended on 180 days of clear conduct; (4) three months loss of commissary; and (5) one year loss of his prison job. (ECF No. 5-2, at 20).

On September 9 and 10, 2014, Thompson filed two BOP administrative remedy requests with the Petersburg warden – one for each DHO appeal – attempting to appeal his loss of good time credit. (ECF No. 5-2, at 23). However, his requests were rejected because they should have

3

been filed with the Mid-Atlantic Regional Director as an appeal from the DHO's decisions. Id. Petersburg's warden advised him to submit his appeals to the Regional Director. Id.; (ECF No. 5-2, at 5). On September 18 and 30, 2014, Thompson filed two separate DHO appeals with the Regional Director, but both were rejected because Thompson failed to submit the warden's response along with his appeal, as required. (ECF No. 5-2, at 24). On February 2, 2015, Thompson filed his request with the BOP's National Appeals Coordinator in the Central Office in Washington, D.C., but that request was rejected because Thompson still had not properly filed his request at the lower level with the Regional Director. (ECF No. 5-2, at 5). He has made no further administrative filings.

## II. PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW

Respondent argues that the Court should dismiss Thompson's petition for failure to exhaust his administrative remedies, or in the alternative, grant summary judgment in favor of Respondent because BOP indeed afforded Thompson the process due under the United States Constitution prior to forfeiting his good time credit. The undersigned recommends the latter.

### A. Exhaustion of Administrative Remedies

"As a general rule, in the absence of 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent,' Bowen v. Johnston, 306 U.S. 19, 27 (1939), courts 'require[ ] exhaustion of alternative remedies before a prisoner can seek federal habeas relief.'" Timms v. Johns, 627 F.3d 525, 530-31 (4th Cir. 2010) (quoting Boumediene v. Bush, 553 U.S. 723, 793 (2008)). However, the generally recognized exhaustion requirement under § 2241, see, e.g., McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished per curiam), is not a jurisdictional requirement. Santiago-Lugo v. Warden, 785 F.3d 467, 471 (11th Cir. 2015). Rather, "for prudential reasons [the Supreme Court] has required exhaustion of

alternative remedies before a prisoner can seek federal habeas relief." Boumediene, 553 U.S. at 793 (emphasis added) (noting "[m]ost of these cases were brought by prisoners in state custody, and thus involved federalism concerns that are not relevant here" (internal citation omitted)). As a result, "because exhaustion is non-jurisdictional, even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." Santiago-Lugo , 785 F.3d at 475 (citing Granberry v. Greer, 481 U.S. 129, 131 (1987) ("[T]here are some cases in which it is appropriate for an appellate court to address the merits of a habeas corpus petition notwithstanding the lack of complete exhaustion.")).

Here, Respondent argues that Thompson failed to exhaust his administrative remedies because he failed to properly perfect his appeal within the BOP system. While that may be true, Respondent has not clearly demonstrated that Thompson failed to exhaust his remedies or that his deficiency warrants dismissal of the petition. The affidavit from the BOP's paralegal and coded BOP records are not conclusive of a failure by Thompson to avail himself to BOP's remedies. Also, there are no prudential concerns in not giving the BOP an additional opportunity to review Thompson's appeal because, as discussed below, Thompson's grievance lacks merit. That is, the result would very likely be the same and cause no prejudice to Respondent. Accordingly, this report will address the merits of Thompson's claims, notwithstanding his imperfect attempt at exhaustion.

### B. Procedural Due Process and Good Time Credit

To obtain habeas relief under § 2241, the petitioner must demonstrate that he is being detained in federal custody, "in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3). Thompson alleges that the execution of his sentence violates the Constitution of the United States because the DHO's hearings deprived him of his Fifth Amendment right to due process and that his status as a D.C. offender precludes the BOP from withholding his good time credit. See (ECF No. 1, at 7). However, Thompson has failed to show that BOP denied him his constitutional right to due process under either argument.

It is well-established that a prisoner's earned good conduct time "is sufficiently embraced within [Fifth] Amendment 'liberty' to entitle [the prisoner] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff v. McDonnell, 418 U.S. 539, 557 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." Id. at 555. To the contrary, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. As the Supreme Court has explained:

> The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action. Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus, the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily. This interest, however, must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Consequently, in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative remedies that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation.

Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-55 (1985) (citations omitted).

Accordingly, the Due Process Clause requires that a prisoner subject to a loss of good time credit through disciplinary sanctions be afforded: (1) written notice of the disciplinary charges at least twenty-four hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) the opportunity to call witnesses and present documentary evidence; (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (5) a written statement provided by the fact finder(s) outlining the evidence relied upon and the reasons for the chosen course of disciplinary action. Wolff, 418 U.S. at 563-67; see also Crawley v. Wilson, No. 2:11cv542, 2012 WL 2505118, at *4 (E.D. Va. May 16, 2012). In addition, the findings of the prison disciplinary board must be "supported by some evidence in the record." Hill, 472 U.S. at 454. BOP met each of these requirements in Thompson's case.

First, Thompson received written notice of the disciplinary charges at least twenty-four hours in advance of the disciplinary hearings on both violations. On the first violation, he received notice September 29, 2010 of the hearing held on October 14, 2010. (ECF No. 5-2, at 2, 9.) On the second, he received notice October 3, 2012 of the hearing held on October 12, 2012. (ECF No. 5-2, at 4-5, 17). Second, the DHO was a neutral and detached hearing body – Thompson has offered no evidence otherwise.[1] Third, Thompson received the opportunity to call witnesses and present documentary evidence. See (ECF No. 5-2, at 9, 17-20). Fourth,

---

[1] On summary judgment, the movant has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." Anderson, 477 U.S. at 252. Rather, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks omitted).

although the hearing was not complex and Thompson is not illiterate, he had an opportunity for non-attorney representation. See id. Finally, Thompson received written statements from the fact finding DHO outlining the evidence relied upon and the reasons for the chosen course of disciplinary action. (ECF No. 5-2, at 11-13, 19-21). The consistent breathalyzer results support the DHO's finding that Thompson in fact violated the BOP Offense Code by possessing or using alcohol. As a result, Thompson was afforded all of his due process rights guaranteed under the constitution prior to deprivation of his liberty interest in good time credit. See Wolff, 418 U.S. at 563-67.

Lastly, Thompson's argument about his status as a D.C. offender has no merit. BOP, as the designee of the United States Attorney General, has legal custody of Thompson for the purposes of carrying out his criminal sentence from the District of Columbia. See D.C. Code § 24-201.26 ("All prisoners convicted in the District of Columbia for any offense, including violations of municipal regulations and ordinances and acts of Congress in the nature of municipal regulations and ordinances, shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served."); D.C. Code § 24-101; United States v. Savage, 737 F.3d 304, 309 (4th Cir. 2013) ("[T]he BOP operates at the Attorney General's direction, and serves as that officer's designee.").

As part of "the felony population sentenced pursuant to the District of Columbia Code . . . [Thompson] shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed." D.C. Code § 24-101; Savage, 737 F.3d at 308-09. Accordingly, BOP calculates Thompson's good time credit

pursuant to 18 U.S.C. § 3624(b). Indeed, Thompson takes no issue with the calculation of his credit, just the revocation. And, the D.C. Code that governed good time credit Thompson cites in his papers has been repealed. See (ECF No. 1, at 16) (citing D.C. Code § 24-428 (repealed)). In short, Thompson's status as a D.C. offender makes no difference to either the revocability of his good time credit or the process due to him under the federal constitution before such liberty interest can be revoked.

Based on the record outlined above, Respondent has "show[n] that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). There are no facts in dispute. See Pet'r's Br. (ECF No. 6). And, the undisputed facts demonstrate that Respondent is entitled to judgment because BOP did not violate Thompson's constitutional rights. Thompson's § 2241 petition is without merit. Therefore, the undersigned recommends that the court grant summary judgment to Respondent and dismiss the petition.

## III. RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS that the Court GRANT Respondent's alternative motion for summary judgment (ECF No. 4), and that Thompson's petition for a writ of habeas corpus under 28 U.S.C. § 2241 be DENIED and the claims DISMISSED with prejudice.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the

date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this Order to the petitioner and to counsel of record for the respondent.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
August 24, 2015

## **Clerk's Mailing Certificate**

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Gary Thompson
31471-007
Federal Corrections Center Medium
P.O. Box 1000
Petersburg, VA 23804

Mark Anthony Exley
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By_____
Deputy Clerk

August 24, 2015